254 N.J. Super. 295 (1992)
603 A.2d 513
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
TERREL MOORE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 9, 1991.
Decided January 17, 1992.
Before Judges STERN and KEEFE.
Patrick J. Bartels, Assistant Middlesex County Prosecutor, argued the cause for appellant (Alan A. Rockoff, Middlesex County Prosecutor, attorney).
Wayne J. Bartholomew, Assistant Deputy Public Defender, argued the cause for respondent (Wilfredo Caraballo, Public Defender, attorney).
*296 PER CURIAM.
Defendant was indicted for possession of cocaine, N.J.S.A. 2C:35-10a(1) (count one), possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5a(1) and -5b(3) (count two), and possession of cocaine with intent to distribute while on school property, N.J.S.A. 2C:35-7. Defendant's motion to suppress was successful, and we granted leave to appeal. We now reverse.
The evidence at the motion to suppress was substantially undisputed and was supplied by a single witness, Richard Stone, Assistant Principal of the Middlesex County Vocational-Technical High School in Piscataway. Stone testified that on January 14, 1988 he was informed by a guidance counselor "that she thought one of her students had a bag of Marijuana", and he "[a]sked the guidance counselor to talk to the student to see if this was true or false." Stone was subsequently advised that the student reported that defendant "had the bag." Stone knew that there had been a prior incident during which a "partially burned marijuana cigarette" had been found in defendant's jacket pocket. Defendant had been disciplined as a result of that event.
Stone asked defendant to "come down to a conference room in the main office and ... asked him if he had in his possession anything he shouldn't have had." Defendant answered in the negative. Thereafter Stone asked defendant if he would "mind emptying his pockets", which defendant voluntarily did. Stone reported the results of his investigation to the "guidance counselor and asked her if there was any further information that she could give because [defendant] had nothing on his person." Based on the information she developed from the student, the guidance counselor advised Stone to "check [defendant's] bookbag." Stone then went to the art class from which defendant had been called, and the teacher there pointed out defendant's bookbag which Stone took to the conference room. Stone asked defendant "if this was his bag" and defendant answered *297 in the negative. In light of that response, Stone opened the bag and took out some books with defendant's name on them. Defendant "grabbed" a hat taken from the bag and put it on. A brown paper bag was also taken from the bookbag. Stone found 75 vials of cocaine, not marijuana, in the brown paper bag.
The motion judge suppressed the evidence concluding that the search violated the Fourth Amendment based on holding of the United States Supreme Court in New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). The judge, in essence, found that the basis for the guidance counselor's report to Stone was not sufficiently developed to justify a finding of "reasonable grounds" and that there were insufficient "reasonable grounds" developed to make further inquiry. The judge did not pass upon the State's alternative argument that the bag was opened only after the defendant denied ownership and that, therefore, defendant had no expectation of privacy with respect to the contents of the bookbag.
In T.L.O., the vice principal of the Piscataway High School received a report from a teacher that two girls were smoking in the girls' room, and the vice principal asked T.L.O. "to come into his private office and demanded to see her purse. Opening the purse, he found a pack of cigarettes, which he removed from the purse and held before T.L.O. as he accused her of having lied to him." The vice principal also "noticed a package of cigarette rolling papers" which he "associated with the use of marijuana." As a result the vice principal conducted a further investigation of the pocketbook and found "a small amount of marijuana" and paraphernalia. 469 U.S. at 328, 105 S.Ct. at 736, 83 L.Ed.2d at 726.
While the United States Supreme Court granted the petition for certiorari to decide whether the exclusionary rule applied in the public school setting and the "appropriate remedy in juvenile court proceedings for unlawful school searches", 469 U.S. at 332, 105 S.Ct. at 737, 83 L.Ed.2d at 728, the Court *298 determined that the search of T.L.O.'s purse "did not violate the Fourth Amendment" and, therefore, did not reach any issue concerning remedy. 469 U.S. at 333, 105 S.Ct. at 738, 83 L.Ed.2d at 729. The Court held that the Fourth Amendment prohibited "unreasonable searches and seizures ... conducted by public school officials", 469 U.S. at 333, 105 S.Ct. at 738, 83 L.Ed.2d at 729, and that "... what is reasonable depends on the context within which a search takes place", 469 U.S. at 337, 105 S.Ct. at 740, 83 L.Ed.2d at 731. Speaking for the Court, Justice White noted that "[a] search of a child's person or a closed purse or other bag carried on her person" constitutes "a severe violation of subjective expectations of privacy", 469 U.S. at 337-338, 105 S.Ct. at 740-741, 83 L.Ed.2d at 732, but that "[a]gainst the child's interest in privacy must be set the substantial interests of teachers and administrators in maintaining discipline in the classroom and on school grounds." 469 U.S. at 339, 105 S.Ct. at 741, 83 L.Ed.2d at 733. In endeavoring to "balance between the school-child's legitimate expectations of privacy and the school's equally legitimate need to maintain an environment in which learning can take place", the Court decided that the "warrant requirement" "would unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools." 469 U.S. at 340, 105 S.Ct. at 742, 83 L.Ed.2d at 733. The Court concluded
that the accommodation of the privacy interests of school children with the substantial needs of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness, under all of the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider `whether the action was justified at its inception', second, one must determine whether the search as actually conducted `was reasonably related in scope to the circumstances which justified the interference in the first place'. Under ordinary circumstances, a search of a student by a teacher or other school official will be `justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the *299 nature of the infraction. [469 U.S. at 341-342, 105 S.Ct. at 742-743, 83 L.Ed.2d at 734-735] (emphasis added; citations and footnotes omitted).
In granting the motion to suppress, the motion judge here focused on the first of the two prongs mentioned for determining the reasonableness of the search. We conclude that the first prong was satisfied by a report from a specific student to a guidance counselor that defendant possessed a controlled dangerous substance and Stone's knowledge that defendant had previously been disciplined for possession of CDS. In any event, Stone did not conduct any search of the bookbag until after defendant expressly denied that it was his. We emphasize that, as the United States Supreme Court has stated in T.L.O., teachers and school administrators need not become involved in "the necessity of schooling themselves in the niceties of probable cause" and that they can "regulate their conduct according to the dictates of reason and common sense", 469 U.S. at 343, 105 S.Ct. at 743, 83 L.Ed.2d at 735. Vice Principal Stone did that here.
Just as the Supreme Court found that the search of the purse by the vice principal in the Piscataway school was reasonable in T.L.O., we conclude that the search of the bookbag by the vice principal in this case was also reasonable.[1]
Accordingly, the orders granting defendant's motion to suppress is reversed, and the matter is remanded to the Law Division for further proceedings.
NOTES
[1] The T.L.O. Court left open for consideration a claim that the search violated the state constitution. See footnote 10, 469 U.S. at 343, 105 S.Ct. at 744, 83 L.Ed.2d at 736. In arguing that "the search and seizure of defendant by an assistant principal were not predicated on a reasonable suspicion that any search would turn up evidence that a student has violated or is violating the law or any school rules", defendant relies upon T.L.O. and does not argue any separate state constitutional right. In any event, we would find none in these circumstances.