959 A.2d 243 (2008)
403 N.J. Super. 428
STATE of New Jersey, Plaintiff-Respondent,
v.
Thomas E. BEST, Defendant-Appellant.
No. A-0891-07T4
Superior Court of New Jersey, Appellate Division.
Argued September 24, 2008.
Decided November 10, 2008.
*244 Stephen F. Funk, argued the cause for appellant (Jacobs & Barbone, P.A., attorneys, *245 Atlantic City; Mr. Funk, on the brief).
Peter J. Gallagher, Assistant Prosecutor, argued the cause for respondent (Theodore F.L. Housel, Atlantic County Prosecutor, attorney; Mr. Gallagher, on the brief).
Before Judges FISHER, C.L. MINIMAN and BAXTER.
The opinion of the court was delivered by
BAXTER, J.A.D.
This appeal presents the question of whether a school principal who suspects that evidence of criminal activity will be found in a student's car parked on school grounds is required to have probable cause before searching that vehicle or whether, instead, the reasonable suspicion standard approved by our Supreme Court and the United States Supreme Court in State in re T.L.O., 94 N.J. 331, 346, 463 A.2d 934 (1983), rev'd on other grounds sub nom. New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), governs. We conclude that the privacy interests of students are outweighed by the substantial interest of teachers and administrators in maintaining a drug-free environment in the classroom and on school grounds. Consequently, we conclude that such vehicle searches need satisfy only the reasonable suspicion standard adopted by both courts in T.L.O. We thus affirm the trial court's order that denied defendant's motion to suppress. We also affirm his September 7, 2007 conviction.[1]

I.
On May 15, 2006, a school nurse at Egg Harbor Township High School notified assistant principal, Peter Brandt, and the school's resource officer, Edward Bertino, that a tenth-grade student, R.S., was suspected of being under the influence of drugs. When questioned by the school nurse, R.S. admitted he had taken a green pill purchased from defendant in class earlier that day. Brandt, accompanied by an assistant principal, immediately commenced an investigation.
Observing established school procedure, Brandt immediately located defendant and directed him to follow Brandt to the office where Brandt confronted defendant with his suspicion that defendant had brought contraband to school. When asked, defendant denied doing so. Brandt notified defendant that because another student claimed to have received a pill from defendant, he and the assistant principal were required to search him. That search yielded three white capsules in defendant's pants pocket. Once the capsules were found, defendant admitted he had sold one such pill to another student for $5, although defendant insisted the capsule was merely a nutritional supplement. In accordance with school protocol, Brandt and the assistant principal searched defendant's locker, but found no contraband. Aware that defendant had driven to school that day, Brandt asked defendant where his car was parked.
After unlocking the car, Brandt found in the passenger compartment of the vehicle *246 various items he believed were drugs, including some marijuana. After the search was completed, Officer Bertino was notified and took defendant into custody. Defendant was thereafter arrested and charged with possession of a controlled dangerous substance (CDS) (steroids and diazepam), N.J.S.A. 2C:35-10(a)(1) (counts one and two); distribution of CDS, N.J.S.A. 2C:35-5(a)(1) (count three); and third-degree distribution of CDS within 1000 feet of a school, N.J.S.A. 2C:35-7 (count four).
Defendant filed a motion to suppress the evidence found during the search of his vehicle. At the hearing on the motion, Brandt testified that students are prohibited from driving to school and must receive special permission in order to do so. So strict is the prohibition against students driving to school without prior approval that the Board of Education adopted a policy, distributed to all students, which provides that "any student found driving to school will be issued an alternative educational placement and any passenger will receive a central detention."
Brandt explained that defendant had received such special permission both because he was having work done on his car in the school's auto mechanics class and because of family circumstances that caused defendant to sometimes stay overnight outside of the township. Brandt explained that students like defendant, who drive their cars to school in connection with the auto mechanics class, are required to leave their keys with the auto mechanics teacher to prevent them from leaving school grounds during the day without permission.
At the conclusion of the motion hearing on April 24, 2007, Judge DeLury denied the motion. Relying on T.L.O., supra, Judge DeLury specifically held that the search "was reasonably related ... in scope to the reasonable suspicions" of school officials that "there may still [have been] green pills [like the one sold to R.S.] on the premises of the school that would [have posed] a real danger to the school community...." He reasoned that vehicles provide students with a place to bring and store contraband on school grounds. Under the circumstances presented, the judge concluded that the search of defendant's car was "a reasonable exercise of school authority for the protection of the safety, welfare and health of the student population."
On appeal, defendant advances a single claim:
THE SEARCH OF DEFENDANT'S CAR BY THE VICE PRINCIPAL OF HIS PUBLIC HIGH SCHOOL WAS NOT REASONABLY JUSTIFIED BY THE POLICY REASONS PERMITTING STUDENT SEARCHES AND SHOULD NOT BE ALLOWED BY THIS COURT.

II.
"[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are `supported by sufficient credible evidence in the record.'" State v. Elders, 192 N.J. 224, 243, 927 A.2d 1250 (2007) (quoting State v. Locurto, 157 N.J. 463, 474, 724 A.2d 234 (1999)). A trial court's findings should be disturbed only if they are so clearly mistaken "`that the interests of justice demand intervention and correction.'" Id. at 244, 927 A.2d 1250 (quoting State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964)).
Both the United States and New Jersey Constitutions "prohibit law enforcement officers from conducting `unreasonable searches and seizures.'" State v. *247 Williams, 192 N.J. 1, 9, 926 A.2d 340 (2007) (footnote omitted). So strong is the right of citizens to be secure in their persons and property that a search conducted by law enforcement must be supported by probable cause. State v. Novembrino, 105 N.J. 95, 107, 519 A.2d 820 (1987). To protect citizens against the risk of unreasonable search and seizure, our courts have, with few exceptions, required police to secure a warrant before conducting a search. Id. at 107-09, 519 A.2d 820.
For school students, however, the landscape is markedly different. School officials may search a student's person or handbag without probable cause and without a warrant. T.L.O., supra, 469 U.S. at 340-41, 105 S.Ct. at 742, 83 L. Ed.2d at 733-34;[2]see also T.L.O., supra, 94 N.J. at 346-47, 463 A.2d 934. Unquestionably, T.L.O. is the seminal decision analyzing the rights of students in the larger context of school officials' obligation to maintain discipline and provide an orderly and safe learning environment. Consequently, we begin our analysis with a brief review of the doctrinal underpinnings of T.L.O.
T.L.O. and another student were caught smoking in the girls' bathroom and were taken to the vice-principal's office, where he demanded to see T.L.O.'s purse. T.L.O., supra, 94 N.J. at 336, 463 A.2d 934. Opening her purse, he found CDS and related paraphernalia. Ibid. The United States Supreme Court, like our Supreme Court, recognized that a search of a student's possessions, "no less than a similar search carried out on an adult, is undoubtedly a severe violation of subjective expectations of privacy." 469 U.S. at 337-38, 105 S.Ct. at 740-41, 83 L.Ed.2d at 732. However, the United States Supreme Court also pointed to school officials' legitimate need to maintain discipline, stating:
Against the child's interest in privacy must be set the substantial interest of teachers and administrators in maintaining discipline in the classroom and on school grounds. Maintaining order in the classroom has never been easy, but in recent years, school disorder has often taken particularly ugly forms: drug use and violent crime in the schools have become major social problems.
[Id. at 339, 105 S.Ct. at 741, 83 L.Ed.2d at 733.]
In an effort to balance the interests of students against the competing interests of school officials, the United States Supreme Court held that the school setting requires a lessening of both the procedural requirements traditionally applied to searches by public authorities and "the level of suspicion of illicit activity needed to justify a search." Id. at 340, 105 S.Ct. at 742, 83 L.Ed.2d at 733-34.
Thus, the Supreme Court concluded that "the warrant requirement ... is unsuited to the school environment [because such requirement] would unduly interfere with the maintenance of the swift and informed disciplinary procedures needed in the schools." Id. at 340, 105 S.Ct. at 742, 83 L.Ed.2d at 733. The Court reasoned that the "`burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search.'" Id. at 340, 105 S.Ct. at 742, 83 L.Ed.2d at 733-34 (citation omitted).
The majority likewise agreed with the school officials' argument that they should be permitted to search T.L.O.'s purse even *248 if they lacked probable cause, so long as they had a reasonable suspicion that the purse contained contraband. Id. at 343-48, 105 S.Ct. at 743-46, 83 L.Ed.2d at 736-38. In so concluding, the majority explained that balancing "the privacy interests of schoolchildren [against] the substantial need of teachers and administrators... to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause...." Id. at 341, 105 S.Ct. at 742, 83 L.Ed.2d at 734. Rather, the Court held, "the legality of a search of a student should depend on the reasonableness, under all of the circumstances, of the search." Ibid. "By focusing attention on the question of reasonableness, the standard will spare teachers and school administrators the necessity of schooling themselves in the niceties of probable cause and permit them to regulate their conduct according to the dictates of reason and common sense." Id. at 343, 105 S.Ct. at 743, 83 L.Ed.2d at 735.
The United States Supreme Court provided a two-pronged inquiry for determining reasonableness: first, whether the action was justified at its inception; and second, whether the search as actually conducted was reasonably related in scope to the circumstances that justified the initial interference. Id. at 341, 105 S.Ct. at 742-43, 83 L.Ed.2d at 734. The Court explained that
[u]nder ordinary circumstances, a search of a student by a ... school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.
[Id. at 341-42, 105 S.Ct. at 742-43, 83 L.Ed.2d at 734-35 (footnotes omitted).]
Surprisingly, little litigation applying T.L.O. has occurred in our State in the nearly quarter-century since the United States Supreme Court decided the case in 1985. On two occasions, the T.L.O. reasonable suspicion standard has been applied in the school context, but those matters did not involve the search of a student's vehicle. See Desilets v. Clearview Reg'l Bd. of Educ., 265 N.J.Super. 370, 382, 627 A.2d 667 (App.Div.1993) (applying standard to search of student hand luggage prior to a school field trip); State v. Moore, 254 N.J.Super. 295, 299, 603 A.2d 513 (App.Div.1992) (applying standard to search of student's bookbag based upon tip that student had brought CDS to school). No reported New Jersey opinion has ever determined whether the T.L.O. standard governs the search of a student's vehicle parked on school grounds. However, as we discuss later in this opinion, our Supreme Court has recognized school officials' strong interest in maintaining a drug-free environment in public schools, and has consequently approved a school policy that authorizes random drug and alcohol screening of high school students in the absence of individualized suspicion. See Joye, supra, 176 N.J. at 607, 826 A.2d 624.
A number of other jurisdictions have, however, decided the precise issue presented here. Each one has rejected the probable cause standard and has applied the two-pronged reasonable suspicion standard of T.L.O. to the search of a student's vehicle on school grounds. See Butler v. Rio Rancho Pub. Sch. Bd. of Educ., 245 F.Supp.2d 1188, 1200 (D.N.M.2002), rev'd and remanded on other grounds, 341 F.3d 1197 (10th Cir.2003); Anders v. Fort *249 Wayne Cmty. Schs., 124 F.Supp.2d 618, 622-23 (N.D.Ind.2000); Shamberg v. State, 762 P.2d 488, 492 (Alaska Ct.App.1988); In re P.E.A., 754 P.2d 382, 388 (Colo.1988); State v. Williams, 339 Ill.App.3d 956, 274 Ill.Dec. 516, 791 N.E.2d 608, 611-12 (2003); Myers v. State, 839 N.E.2d 1154, 1159-60 (Ind.2005), cert. denied, 547 U.S. 1148, 126 S.Ct. 2295, 164 L.Ed.2d 814 (2006); Covington County v. G.W., 767 So.2d 187, 192-94 (Miss.2000); In re Michael R., 11 Neb. App. 903, 662 N.W.2d 632, 637 (2003); F.S.E. v. State, 993 P.2d 771, 772 (Okla. Crim.App.1999); Coronado v. State, 835 S.W.2d 636, 641 (Tex.Crim.App.1992); and State v. Slattery, 56 Wash.App. 820, 787 P.2d 932, 933-34 (1990). No reported decision in any state or federal court has held otherwise.[3]
We are persuaded by the reasoning of those courts. The Supreme Court of Mississippi's reasoning exemplifies the rationale of courts that have rejected a defendant's argument that students have a higher expectation of privacy in their vehicles than they do in their lockers: "While this may be true when one is driving down the street, we can hardly say such a higher expectation of privacy should be had in a car on school property as opposed to a school locker." Covington, supra, 767 So.2d at 193.
Moreover, as a number of our sister courts have observed, a car, like a locker, bookbag or purse, is one of the few places in which a student can transport contraband to school and keep it concealed from school officials' view. See, e.g., P.E.A., supra, 754 P.2d at 389 (commenting on the "limited ways" the defendant might have transported the marijuana to school and concealed it). Accordingly, we agree with those courts that have concluded that a student whose car is searched while it is parked on school grounds is entitled to no greater an expectation of privacy than is a student whose locker or bookbag is searched.
In light of the magnitude of the threat that narcotics in a school environment pose to the well-being of students, we have no hesitancy concluding that the T.L.O. standard, rather than probable cause, should govern searches of student vehicles parked on school grounds. In reaching that conclusion, we rely heavily on our Supreme Court's decision in Joye, where the Court concluded that school officials "ha[d] presented a special need to `justif[y] the privacy intrusions at issue absent ... individualized suspicion.'" Joye, supra, 176 N.J. at 595, 826 A.2d 624 (quoting N.J. Transit PBA Local 304 v. N.J. Transit Corp., 151 N.J. 531, 559, 701 A.2d 1243 (1997)). In Joye, the Court held that school officials had compiled a sufficient record of pervasive drug use at the high school[4] to justify the school policy of requiring students participating in extra-curricular activities and those driving to school to submit to randomand suspicionless *250 urine drug tests for CDS. Id. at 603, 826 A.2d 624. Students who tested positive were not prosecuted, but were required to attend a substance abuse treatment program. Id. at 580, 826 A.2d 624.
In approving Hunterdon's drug testing policy, which compelled selected students to submit to drug testing in the absence of individualized suspicion, the Court recognized that "schoolchildren possess a diminished expectation of privacy." Id. at 590, 826 A.2d 624. The Court also observed that "school officials must have authority to `maintain order, safety and discipline [within a school].'" Ibid. (quoting T.L.O., supra, 94 N.J. at 342, 463 A.2d 934). Characterizing the "schoolmaster-student relationship" as "analogous to that of parent and child," ibid. (citation omitted), the Court reasoned:
Given their special status, "school officials [are] permitted a degree of latitude in enforcing behavior within the schools that other governmental bodies [do] not enjoy."
... "[I]n a limited sense the teacher stands in the parent's place in his relationship to a pupil under his care and charge...."
It must be borne in mind that the relationship between the child and the school authorities is not a voluntary one but is compelled by law. The child must attend school and is subject to school rules and discipline[ ]. In turn the school authorities are obligated to take reasonable precautions for [the child's] safety and well-being.
[Id. at 590-91, 826 A.2d 624 (citations omitted).]
In light of the diminished constitutional rights of school students and the authority residing in school officials to keep the school environment safe, the Court permitted the same "relaxed application of traditional search and seizure rules" that it had authorized in T.L.O. Id. at 593, 607, 826 A.2d 624.
The Court's ruling in Joye informs our analysis here. As the Court observed, that school officials daily confront "a drug and alcohol problem of significant magnitude... is beyond reasonable debate." Id. at 601, 826 A.2d 624. The Constitution does not strip school officials of the tools they need to battle that epidemic. Id. at 618-19, 826 A.2d 624.
We accordingly view the measures Brandt took here in the same favorable light the Court applied in Joye, when it analyzed the measures taken by school officials there. Here, the duty of school administrators to protect students from the scourge of drugs is identical to the duty confronting school authorities in Joye. A student's diminished expectation of privacy while on school grounds in Joye is identical to the reduced expectation in this case. Consequently, we conclude that neither a search warrant nor probable cause was required when Brandt searched defendant's car. Joye teaches that the protections routinely afforded to adults are not required within school walls. Ibid.
While we recognize thatunlike in Joyethe fruits of the search can lead to criminal prosecution, we conclude that such potential for an adverse outcome is nonetheless acceptable. We so conclude because, unlike in Joye, the search is not "suspicionless," id. at 608, 826 A.2d 624, but must instead be grounded in an individualized and reasonable suspicion.
We have carefully considered the contrary arguments, and conclude that there is no principled basis upon which to conclude that the standard governing searches of a student's vehicle on school grounds should be more rigorous or demanding than the reasonable suspicion standard that applies to searches of student *251 luggage before a school trip, Desilets, supra, 265 N.J.Super. at 382, 627 A.2d 667, or to searches of student bookbags, Moore, supra, 254 N.J.Super. at 299, 603 A.2d 513.
Moreover, our Legislature, like our Supreme Court, has treated the school environment as sacrosanct and has recognized the strong societal interest in protecting school children from the pernicious and corrupting influence of CDS. One need look no further than N.J.S.A. 2C:35-7 to find a legislative expression of the strong need to protect children from the corrupting influence of CDS.[5]
Consequently, we hold that school officials: 1) are not required to obtain a warrant before searching a student vehicle parked on school grounds and 2) may conduct such search whenever, under the totality of the circumstances, the search was justified at its inception and officials reasonably suspect that evidence of illegal activity will be found in the vehicle.
In so holding, we specifically reject defendant's argument that the search of his vehicle should be governed by the probable cause standard that attaches to a stop of an automobile and the search of its contents. See, e.g., State v. Eckel, 185 N.J. 523, 540-41, 888 A.2d 1266 (2006) (holding that the warrantless search of an automobile based on less than probable cause cannot be justified under any exception to the warrant requirement and is unreasonable). We believe the Court's requirement in Eckelthat police obtain a warrant once the suspect has been secured and no longer poses a potential threat to the safety of police officersibid., is inapposite where, as here, the safety of sizeable portions of a student body is potentially at risk. It is also unreasonable to expect school officials, whose role is to educate students-not search themto be schooled in the evolving standards of the Fourth Amendment that we expect of police. For those reasons, and especially in light of the special treatment of schools in our decisional law, Eckel and other automobile exception cases are inapposite.
We emphasize, however, that our holding is limited to the facts presented here: a search of a student's vehicle on school grounds where school officials limit and control students' ability to park there. We leave for another day the more difficult question of the standards to be applied when the student's vehicle is parked on a public street rather than on school grounds, or, if parked on school grounds, when no advance permission to do so is required.
We turn now to an application of the T.L.O. standard to the facts of this case. The record here supports a finding that the search of defendant's vehicle was based upon reasonable suspicion of criminal activity. Specifically, the questioning of defendant and the search of his person were justified by Brandt's knowledge that defendant sold a green pill to another student in violation of school rules. When that search yielded several white capsules, but none of the green pills described by R.S., Brandt was justified in searching defendant's locker, and subsequently his car, because Brandt reasonably believed additional green pills were likely to be stashed in defendant's car and thus available for sale to other students. Brandt therefore had reasonable suspicion from the outset that the green pills could be found in defendant's car, thereby satisfying the first prong of the T.L.O. test. T.L.O., *252 supra, 469 U.S. at 341-42, 105 S.Ct. at 742-43, 83 L.Ed.2d at 734.
These same facts likewise satisfy the second prong of T.L.O. because the search as actually conducted was reasonably related in scope to the circumstances that justified the interference in the first place. Ibid. Specifically, Brandt's objective finding the green pills and other possible contrabandjustified the search of defendant's car when no green pills were found on defendant's person or in his locker. The search was narrowly focused on defendant's car, which, logically, was the only remaining place the green pills could have been hidden. We thus conclude that Judge DeLury properly found that the two-pronged T.L.O. standard was amply satisfied here. Accordingly, the denial of defendant's motion to suppress the evidence found in defendant's car is affirmed.
Affirmed.
NOTES
[1] We recognize that defendant has been released from prison and is participating in the Intensive Supervision Program (ISP). We do not consider this appeal to be moot as defendant will remain subject to the rigorous conditions of ISP, and will face the possibility of a return to prison if he violates those conditions, until September 7, 2010. We deem it important to "resolve [this] constitutional challenge given its public significance and the likelihood `that controversies similar to this one will present themselves in the future'." Joye v. Hunterdon Cent. Reg'l. High Sch. Bd. of Educ., 176 N.J. 568, 583, 826 A.2d 624 (2003) (quoting Clymer v. Summit Bancorp., 171 N.J. 57, 66, 792 A.2d 396 (2002)).
[2] The United States Supreme Court expressly declined to decide the standard to be applied to the search of a student's locker, id. at 337 n. 5, 105 S.Ct. at 741 n. 5, 83 L.Ed.2d at 732 n. 5; however, our Supreme Court, in the case consolidated with T.L.O., State v. Engerud, 93 N.J. 308, 460 A.2d 701 (1983), held that the reasonable suspicion standard governs the search of a student's locker. T.L.O., supra, 94 N.J. at 348, 463 A.2d 934.
[3] Only where the search was conducted by a police officer, James v. Unified Sch. Dist. No. 512, 959 F.Supp. 1407, 1413-14 (D.Kan. 1997), In re Dengg, 132 Ohio App.3d 360, 724 N.E.2d 1255, 1257-59 (1999), or by a school official acting in concert with a police officer, Marner v. Eufaula City Sch. Bd., 204 F.Supp.2d 1318, 1325 (M.D.Ala.2002), State v. Barrett, 683 So.2d 331, 339-40 (La.Ct.App.1 Cir.1996), has the probable cause standard been applied.
[4] The record established that the school principal personally was aware of two students snorting heroin on school grounds and teachers, coaches and administrators reported a "growing problem" with drugs. Three drug-related deaths had occurred in municipalities within the school district, four students were identified as having ingested drugs while on school premises, and one-third of the students admitted to using marijuana. Id. at 603, 826 A.2d 624.
[5] N.J.S.A. 2C:35-7 imposes a mandatory period of parole ineligibility on those convicted of distributing CDS within 1000 feet of a school, regardless of the defendant's lack of prior record.