987 A.2d 605

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. THOMAS E. BEST, DEFENDANT–APPELLANT.

Argued September 14, 2009—Decided February 3, 2010.

*Stephen F. Funk*, argued the cause for appellant (*Jacobs & Barbone*, attorneys).

*Boris Moczula*, Assistant Attorney General, argued the cause for respondent (*Anne Milgram*, Attorney General of New Jersey, attorney).

*Avidan Y. Cover*, argued the cause for *amicus curiae* on behalf of the American Civil Liberties Union of New Jersey Foundation (*Gibbons*, attorneys; *Ms. Cover, Lawrence S. Lustberg, Edward L. Barocas, Jeanne M. LoCicero* and *Nadia N. Seeratan*, attorneys, on the brief).

*Cynthia J. Jahn*, submitted a brief on behalf of *amicus curiae* New Jersey School Boards Association (*Ms. Jahn* and *Donna M. Kaye*, attorneys, on the brief).

Justice WALLACE, JR., delivered the opinion of the Court.

We granted certification to determine whether the reasonable grounds standard adopted by our Court and the United States Supreme Court in *State in the Interest of T.L.O.*, 94 *N.J.* 331, 346, 463 *A.*2d 934 (1983), *rev'd on other grounds sub. nom. New Jersey v. T.L.O.*, 469 *U.S.* 325, 105 *S.Ct.* 733, 83 *L.Ed.*2d 720 (1985), applies to a public high school assistant principal's search of a student's car on school property. The trial court found that the reasonable grounds standard applied, and the Appellate Division affirmed. *State v. Best*, 403 *N.J.Super.* 428, 959 *A.*2d 243 (App. Div.2008). We granted certification. 198 *N.J.* 313, 966 *A.*2d 1078 (2009). We now affirm. We hold that a school administrator need only satisfy the lesser reasonable grounds standard rather than the probable cause standard to search a student's vehicle parked on school property.

I.

The facts are largely undisputed. In the early afternoon of May 15, 2006, Peter Brandt (Brandt), the assistant principal of Egg Harbor Township High School, received a report of a student suspected of being under the influence of drugs. Brandt met with the student, who admitted he ingested a green pill that eighteen-year-old defendant Thomas Best gave him during fifth period auto shop class. After sending the student to a doctor for medical assistance and screening, Brandt located Best in his eighth period class and escorted him to the office.

Brandt and another assistant principal, Ted Pugliese, interviewed Best, who denied any wrongdoing. Brandt explained to Best that a student claimed he received a green pill from Best. Brandt then searched Best and found three white capsules in his pants pocket, but no green pills. Best admitted that he sold a pill to a student for five dollars, but claimed that the pill was merely a nutritional supplement. Brandt subsequently searched Best's locker, but discovered no pills.

Brandt was also aware that he had previously given Best permission to drive to school to have his car serviced in the school's auto shop. Brandt asked Best where his car was parked and indicated that he was going to search Best's car. Brandt, Pugliese, and Best then proceeded to the car that was parked outside of the auto shop on school property. Before searching the car, Brandt declined Best's request to call his father. A search of the passenger compartment revealed a liquid-filled syringe, a fake cigarette with a hole in it that could be used as a pipe, a wallet, a bottle of pills apparently belonging to Rose Foster, a bag of suspected marijuana, a bag containing a white powdery substance, and a vial.

Brandt then contacted the school resource officer, Edward Bertino of the Egg Harbor Township Police Department, to advise him of the situation. Bertino, who was stationed at the school, arrived and took control of the items removed from Best's car before transporting Best to the police station. Best was arrested. He waived his right to remain silent and admitted that the contraband belonged to him.

Based on the evidence seized from defendant's car, the State charged defendant with distribution of diazepam to a person under the age of seventeen, distribution or possession with intent to distribute diazepam, two counts of possessing a controlled dangerous substance (CDS), one count of possessing under fifty grams of CDS, and two counts of possessing drug paraphernalia.

Defendant moved to suppress the evidence seized from his car as a violation of his Fourth Amendment rights. Brandt was the

primary witness at the suppression hearing. In addition to the facts set forth above, Brandt testified that the school has a school handbook, containing various policies, given to students each year. For example, there is a zero tolerance policy for drugs, alcohol, and other substances. That policy allows administrative inspections of students' lockers, book bags, purses, and backpacks in the interest of school safety and discipline, and the enforcement of school regulations. Brandt explained that the handbook also requires students to obtain approval to drive to school. If permission to drive is granted, the student is given a limited-duration permit to be displayed on the car. Brandt noted that anyone permitted to drive to school for auto shop service must surrender their car keys to the auto shop teacher. Brandt also testified that in furtherance of the school's policy of protecting students' health, safety, and welfare, if he suspected a student had weapons, drugs, stolen items or anything threatening the safety of students, he would search the student and the student's locker. In addition, if the student had a car on school property, then the car would be searched. Brandt had previously conducted three or four car searches.

Based on the evidence presented, the trial court found that the assistant principal's search of the car was reasonably related in scope to his reasonable suspicion that defendant had additional drugs that posed a real danger to the school community. Consequently, the trial court denied the motion to suppress.

Defendant subsequently entered into a plea agreement with the State. In exchange for defendant's agreement to plead guilty to distribution of diazepam on school property, the State agreed to move to dismiss all other charges and to recommend a sentence of three years. Additionally, the State would not object to defendant's application for admittance into the Intensive Supervision Program (ISP). The trial court imposed the recommended sentence, and in September 2007, defendant applied for admission into ISP and was subsequently admitted.

Meanwhile, defendant appealed. He argued the search of his car was not reasonably justified by the school policy permitting student searches. In a published opinion, the Appellate Division affirmed the trial court's order denying defendant's motion to suppress. *Best, supra,* 403 *N.J.Super.* at 428, 959 *A.*2d 243. The panel concluded that the standard for school searches outlined by the United States Supreme Court in the seminal *T.L.O.* case, applied to the search by a school official of a student's vehicle on school property. *Id.* at 438, 440–41, 959 *A.*2d 243. The panel applied the *T.L.O.* standard to the facts of the case and concluded that the assistant principal's search of the car was entirely reasonable. *Id.* at 442, 959 *A.*2d 243.

We granted defendant's petition for certification. 198 *N.J.* 313, 966 *A.*2d 1078 (2009). We also granted amicus curiae status to the American Civil Liberties Union of New Jersey (ACLU) and the New Jersey School Boards Association.

## II.

Defendant urges that the important need for school officials to maintain discipline and safety does not justify extension of the reasonable grounds standard to student vehicles and contends that the probable cause standard should apply to the search of a car. He adds that extending the reasonable grounds standard to the search of a car would thwart this Court's tradition of heightened protection in the context of automobile searches. In the alternative, defendant claims that even if the reasonable grounds standard is applicable, the search of his car was not reasonably related in scope to the information relayed to the assistant principal.

In contrast, the State urges that the reasonable grounds standard should govern school officials' searches of students' vehicles on school property and that students' vehicles should be treated similarly to any other container on school property, like a purse, book bag, or locker, in which a student can conceal drugs, weapons, or other contraband. The State posits that applying the reasonable grounds standard in this case does not offend New

Jersey's heightened protection of privacy rights because the educational setting takes primacy over the nature of the property. The State adds that the New Jersey Constitution should not be invoked to reach a result different from other courts.

The ACLU supports the positions taken by defendant and specifically urges this Court to adopt a probable cause standard for the search of a student's automobile on school property. The ACLU urges that this Court invoke Article I, paragraph 7 of the New Jersey Constitution because adhering to federal precedent in this context provides insufficient protection to New Jersey residents.

The New Jersey School Boards Association essentially echoes the arguments of the State and cautions against applying a standard other than reasonable grounds to search a student's automobile on school property.

### III.

In similar language, the United States and the New Jersey Constitutions protect citizens against unreasonable searches and seizures and require the State to obtain a warrant prior to a search or seizure. *U.S. Const.* amend. IV; *N.J. Const.* art. I, ¶ 7. Consistent with that standard, a warrantless search is presumed invalid unless it falls "within a recognized exception to the warrant requirement." *State v. Pena–Flores,* 198 *N.J.* 6, 11, 18, 965 *A.*2d 114 (2009) (reaffirming "our longstanding precedent that permits an automobile search without a warrant only in cases in which the police have both probable cause to believe that the vehicle contains evidence and exigent circumstances that would justify dispensing with the warrant requirement"); *see also State v. Hill,* 115 *N.J.* 169, 173–74, 557 *A.*2d 322 (1989) (listing various exceptions to warrant requirement). We have explained that "[o]ur willingness to tolerate a warrantless search often turns on the overall reasonableness of the government's conduct and the degree to which a citizen has a legitimate expectation of privacy in the invaded place." *Joye v. Hunterdon Cent. Reg'l High Sch. Bd.*

*of Educ.,* 176 *N.J.* 568, 590, 826 *A.*2d 624 (2003) (citation and internal quotation marks omitted).

It is clear that the protections of the United States and the New Jersey Constitutions apply to minors and students. *T.L.O., supra,* 94 *N.J.* at 339–40, 463 *A.*2d 934. This Court emphasized in *T.L.O.* that the "recognition of students' legitimate entitlement to the minimum protections of the Constitution parallels the developing concern of the Court that the juvenile justice system reflect the fundamental fairness that our Constitution guarantees adult offenders." *Id.* at 340, 463 *A.*2d 934 (citation omitted); *see also Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 *U.S.* 503, 506, 89 *S.Ct.* 733, 736, 21 *L.Ed.*2d 731, 737 (1969) ("It can hardly be argued that . . . students . . . shed their constitutional rights . . . at the schoolhouse gate.").

Among the constitutional protections afforded students is the right to be free from unreasonable searches and seizures by state officers. *T.L.O., supra,* 94 *N.J.* at 339–41, 463 *A.*2d 934. Moreover, constitutional protections must be afforded by "the State itself and all of its creatures—Boards of Education not excepted." *Id.* at 341, 463 *A.*2d 934 (quoting *W. Va. Bd. of Educ. v. Barnette,* 319 *U.S.* 624, 637, 63 *S.Ct.* 1178, 1185, 87 *L.Ed.* 1628, 1637 (1943)). "It is of little comfort to one charged in a law enforcement proceeding whether the public official who illegally obtained the evidence was a municipal inspector, a firefighter, or school administrator, or law enforcement official." *Ibid.* (citations omitted).

Just as courts recognize exceptions to the warrant requirement, courts also recognize in limited circumstances exceptions to the probable cause standard and permit searches and seizures based on reasonable grounds. *T.L.O., supra,* 469 *U.S.* at 340–41, 105 *S.Ct.* at 742, 83 *L.Ed.*2d at 734. The school setting is one such limited circumstance. *Ibid.*

In *T.L.O., supra,* this Court weighed the privacy rights of students against the duty of "school officials to maintain order, safety and discipline." 94 *N.J.* at 342, 463 *A.*2d 934. There, a

report of students smoking in the girl's bathroom resulted in the assistant principal conducting a warrantless search of a student's purse. *Id.* at 336, 463 *A.2d* 934. During the search, he found a pack of cigarettes, rolling paper, a metal pipe used for smoking marijuana, empty plastic bags, and a plastic bag containing a tobacco-like substance. *Ibid.* The student was taken to the police station where she admitted selling drugs to students. *Id.* at 337, 463 *A.2d* 934. The student was charged with delinquency. *Ibid.* The trial court denied her motion to suppress, and a divided panel of the Appellate Division affirmed. *Id.* at 337–38, 463 *A.2d* 934.

This Court decided the appeal solely on Fourth Amendment grounds. *Id.* at 336, 463 *A.2d* 934. The Court explained that although the probable cause standard is used when police participate in the search, a less stringent standard than probable cause may be appropriate "when police have not participated in the search." *Id.* at 345, 463 *A.2d* 934. The Court held that "when a school official has reasonable grounds to believe that a student possesses evidence of illegal activity or activity that would interfere with school discipline and order, the school official has the right to conduct a reasonable search for such evidence." *Id.* at 346, 463 *A.2d* 934. The Court explained that such a standard "represents the best way to vindicate each student's right to be free from unreasonable searches and to receive a thorough and efficient education." *Ibid.* The Court then applied that test and concluded that the school official's search was unreasonable because he lacked reasonable grounds to believe that the student was concealing evidence of illegal activity in her purse. *Id.* at 347, 463 *A.2d* 934.

The United States Supreme Court granted the State's petition for certiorari. *New Jersey v. T.L.O.,* 464 *U.S.* 991, 104 *S.Ct.* 480, 78 *L.Ed.*2d 678 (1983). That Court agreed with this Court's expression that a reasonableness standard was the appropriate legal standard, but rejected the application of that standard to the facts. *T.L.O., supra,* 469 *U.S.* at 340, 345, 105 *S.Ct.* at 742, 744, 83 *L.Ed.*2d at 733–34, 737. The Court recognized "that the school

setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject." *Id.* at 340, 105 *S.Ct.* at 742, 83 *L.Ed.*2d at 733. In weighing the student's expectations of privacy on the one hand and the school's interest in maintaining discipline and order on the other, the Court decided that "the public interest is best served by a Fourth Amendment standard of reasonableness that stops short of probable cause." *Id.* at 341, 105 *S.Ct.* at 742, 83 *L.Ed.*2d at 734. Under the reasonable grounds standard, a search by school authorities "will be permissible ... when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Id.* at 342, 105 *S.Ct.* at 743, 83 *L.Ed.*2d at 735.

In *T.L.O., supra,* this Court also addressed a second appeal and applied the reasonableness standard to invalidate a search of a student's locker. *T.L.O.,* 94 *N.J.* at 348–49, 463 *A.*2d 934. In the second case, a police detective received a telephone call from a person claiming to be the father of a student who complained that another student was selling drugs in school. *Id.* at 338, 463 *A.*2d 934. The detective relayed that information to school authorities, and the school authorities used a pass-key to open the student's locker. *Ibid.* A search of the locker revealed suspected drugs, and a subsequent search of the student's pockets revealed a small amount of marijuana and $45 in cash. *Id.* at 338–39, 463 *A.*2d 934.

The State charged the student with several drug offenses. *Id.* at 339, 463 *A.*2d 934. After the student's motion to suppress the items seized from the locker and his person was denied, the student pled guilty. *Ibid.* This Court certified the student's appeal directly and reversed. *Id.* at 339, 350, 463 *A.*2d 934.

The Court concluded that the anonymous tip relayed from a police detective to a vice principal at the school lacked "the necessary factual predicate for a reasonable ground to believe that [the student's] locker contained evidence in accordance with the test described." *Id.* at 348, 463 *A.*2d 934. Moreover, the Court recognized that students have a legitimate expectation of privacy

in their lockers, even if school administrators possess a master key. *Id.* at 348–49, 463 *A*.2d 934. Nevertheless, the Court noted that expectation of privacy may not be present if "the school carried out a policy of regularly inspecting students' lockers[.]" *Id.* at 349, 463 *A*.2d 934.

Although in the context of a suspicion-less search, almost twenty years after *T.L.O.*, this Court validated a high school's random drug and alcohol testing program for "all students who participate in athletic and non-athletic extracurricular activities, or who possess school parking permits." *Joye, supra,* 176 *N.J.* at 573, 826 *A*.2d 624. In doing so, the Court emphasized that *T.L.O.* established that the constitution protects students from "unreasonable searches and seizures ... within a public school" and that "the schoolhouse environment, with its emphasis on safety, order, and discipline, requires a relaxed application of traditional search-and-seizure rules." *Id.* at 593, 826 *A*.2d 624. Also, the Court approved the testing program for students wishing to park on school grounds because the need to "maintain an adequate [parking] lot" and to "safeguard students from collision and other risks ... makes parking akin to an extracurricular activity triggering special-needs analysis." *Id.* at 617, 826 *A*.2d 624.

Recently, the United States Supreme Court, applying the reasonable grounds standard, approved a search of a student's locker and outer clothing, but invalidated a strip search of the female student. *Safford Unified Sch. Dist. # 1 v. Redding,* —— *U.S.* ——, ——, 129 *S.Ct.* 2633, 2637–38, 174 *L.Ed.*2d 354, 360 (2009). In that case, a middle school assistant principal received a report that a student gave pills to other students. *Id.* at ——, 129 *S.Ct.* at 2638, 174 *L.Ed.*2d at 360. The assistant principal met with the student and searched her backpack but found no pills. *Ibid.* The student was taken to the nurse's office where a search of her person was conducted. *Ibid.* As part of that search, the student was required to remove her outer clothing, "to pull her bra out and to the side and shake it, and to pull out the elastic on her underpants." *Ibid.* No pills were found. *Ibid.*

The student's mother filed suit against the school district and school officials for conducting a strip search in violation of the student's Fourth Amendment rights. *Ibid.* The District Court found no Fourth Amendment violation, and a panel of the Ninth Circuit affirmed. *Ibid.* A divided Circuit, sitting en banc, reversed. *Ibid.* The United States Supreme Court, applying the reasonableness standard of *T.L.O.*, initially found that based on another student's statement that she received pills from the student, the vice principal was justified in searching the student's backpack and outer clothing. *Id.* at ——, 129 *S.Ct.* at 2641, 174 *L.Ed.*2d at 363. The Court reasoned that "[i]f a student is reasonably suspected of giving out contraband pills, she is reasonably suspected of carrying them on her person and in the carryall [backpack] that has become an item of student uniform in most places today." *Ibid.* The Court reached a different conclusion for the search of the student's undergarments because there was no "indication of danger to the students from the power of the drugs or their quantity," and there was no reason to believe the student "was carrying pills in her underwear." *Id.* at ——, 129 *S.Ct.* at 2642–43, 174 *L.Ed.*2d at 365. The Court emphasized that such a search was so intrusive that it required "its own specific suspicions." *Id.* at ——, 129 *S.Ct.* at 2643, 174 *L.Ed.*2d at 365.

## IV.

With that legal landscape as our background, we turn now to address the legal arguments presented here. Although we have not previously decided whether the reasonable grounds standard or the probable cause standard should apply to a school administrator's search of a student's vehicle on school property, other jurisdictions have. Those jurisdictions have consistently applied a reasonableness standard to the search of student vehicles on school property. *See Best, supra,* 403 *N.J.Super.* at 437–38, 959 *A.*2d 243 (collecting cases).

For example, the Colorado Supreme Court, faced with a similar fact pattern, applied the reasonable grounds standard. *In re*

*P.E.A.*, 754 *P*.2d 382 (Colo.1988). In that case, school authorities were informed that two students intended to sell marijuana. *Id.* at 384. After a search of the students revealed no drugs, the authorities learned that a student named P.E.A. had driven one of the students who was searched to school. *Ibid.* School officials searched P.E.A.'s car and found contraband. *Ibid.* The State eventually charged P.E.A. with delinquency, after which the trial court granted his motion to suppress, finding the search violated the reasonable grounds standard. *Id.* at 384–85. The Colorado Supreme Court disagreed, finding that the search of P.E.A.'s car was justified at its inception and that "the measures taken by school officials in searching P.E.A., his locker, and his car, which provided the means for transporting the marijuana to the school and for concealing the contraband, were reasonably related to the objectives of the search and not excessively intrusive." *Id.* at 389–90.

In the present case, we find no justification to reach a different conclusion. We have repeatedly declared that the school setting calls "for protections geared toward the safety of students." *Leang v. Jersey City Bd. of Educ.*, 198 *N.J.* 557, 580, 969 *A*.2d 1097 (2009). Indeed, "the education of youth is essential to . . . the future well-being of society[.]" *Abbott v. Burke*, 199 *N.J.* 140, 144, 971 *A*.2d 989 (2009). Obviously, the education process is hampered when drugs and other illegal activities are present. *Vernonia Sch. Dist. 47J v. Acton*, 515 *U.S.* 646, 662, 115 *S.Ct.* 2386, 2395, 132 *L.Ed.*2d 564, 580 (1995) (noting "the effects of a drug-infested school are visited not just upon the users, but upon the entire student body and faculty, as the educational process is disrupted"). Indeed, the need for school officials to maintain safety, order, and discipline is necessary whether school officials are addressing concerns inside the school building or outside on the school parking lot. *See, e.g., Joye, supra,* 176 *N.J.* at 617, 826 *A*.2d 624 (recognizing "students wishing to park on school grounds ask school officials to extend their supervisory authority beyond the classroom").

Defendant and the ACLU argue that there is a greater expectation of privacy in the student's automobile than in the student's purse or locker, and therefore the probable cause standard should apply. We do not agree. We are convinced that students have just as strong a privacy interest in their person as they do in the contents of their automobile; despite that expectation of privacy, we apply the reasonableness standard to the search of a person. Of course, we are speaking about searches of a student's outer clothing because "as the intrusiveness of the search intensifies, the standard of Fourth Amendment reasonableness approaches probable cause." *T.L.O.*, *supra*, 94 *N.J.* at 346, 463 *A.*2d 934 (citation and internal quotation marks omitted); *Safford Unified Sch. Dist. # 1*, *supra*, —— *U.S.* at ——, —— 129 *S.Ct.* at 2641, 2643, 174 *L.Ed.*2d at 363, 365 (finding reasonable suspicion sufficient to search student's outer clothing and backpack but further search of undergarments requires its own suspicions).

■ It is the school environment and the need for safety, order, and discipline that is the underpinning for the school official—who has reasonable grounds to believe that a student possesses contraband—to conduct a reasonable search for such evidence. To be sure, a student may hide contraband in his or her clothing, purse, book bag, locker, or automobile. Consequently, we conclude that the reasonableness standard, and not the traditional warrant and probable cause requirements, applies to the school authorities' search of a student's automobile on school property.

## V.

■ We turn now to apply the reasonable grounds standard to the facts here. As noted, that standard requires that we first determine whether the school authority was justified to conduct a search at the inception. *T.L.O.*, *supra*, 469 *U.S.* at 341–42, 105 *S.Ct.* at 742–43, 83 *L.Ed.*2d at 734–35. That is, were there reasonable grounds for suspecting that the search would turn up evidence that the student violated or was violating either the law or the rules of the school? *Ibid.*

Here, the vice principal met with a student, who appeared to be under the influence of drugs, and the student indicated that defendant had given him a green pill. That information was sufficient for the vice principal to interview defendant and, once defendant denied any knowledge, to search his clothing for contraband.

The second part of the test is whether the search conducted was reasonably related in scope to the circumstances that justified the interference in the first place. *Ibid.* The search of defendant's person revealed three white capsules in his pants pocket, but no green pills were found. Defendant then admitted that he sold a white pill to a student for five dollars, claiming the pill was a nutritional supplement. The vice principal next extended the search to defendant's locker, and when that proved unsuccessful, to defendant's car. It was reasonable for the vice principal to believe that defendant may have additional contraband in all areas accessible to him on school property, including his locker and his car. Consequently, the vice principal's search of defendant's car was reasonably related in scope to the various locations on school property that defendant might have placed the contraband—on his person, his locker, and his car.

Defendant and the ACLU nevertheless urge that we should construe Article I, paragraph 7 of the New Jersey Constitution as providing greater protection than its federal counterpart and therefore impose a probable cause standard to support a school official's search of a student's car. Faced with a similar argument in *Joye*, we stated that

> [w]e find nothing in the history of Article I, paragraph 7, in preexisting State law, or in the prevailing attitudes of the public that would warrant that result. To the contrary, . . . our law regarding searches within the public-school context generally has mirrored federal law, encapsulating similar if not identical concepts and concerns.
>
> [*Joye, supra*, 176 *N.J.* at 607–08, 826 *A.*2d 624 (citations omitted).]

We continue to adhere to the position we espoused in *Joye*, and we decline the invitation to find to the contrary.

## VI.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.