THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MICHELE E. WILLIAMS, Defendant-Appellee.

Second District    No. 2—02—0573

Opinion filed June 9, 2003.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

No brief filed for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Defendant, Michele Williams, was indicted for the unlawful use of weapons (720 ILCS 5/24—1(a)(4) (West 2000)) and unlawful possession of firearms (720 ILCS 5/24—3.1(a)(1) (West 2000)) after a .38-caliber revolver was found in the trunk of her parked car at Hinsdale Central High School. The circuit court of Du Page County granted defendant's motion to quash arrest and suppress evidence and denied the State's subsequent motion to reconsider. The State filed a certificate of impairment and a timely notice of appeal. The State contends on appeal that the trial court committed reversible error in granting defendant's motion.

■ We begin by noting that defendant has not filed an appellee's brief. We do not automatically reverse a trial court's judgment merely because the appellee has not filed a brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 131 (1976). Under such circumstances, we may choose to address the merits of the appeal where the record is simple and the issues are such that the court can easily resolve them without the aid of an appellee's brief. *Talandis*, 63 Ill. 2d at 133. We determine that this case meets these criteria and choose to address the merits. That said, we will not serve as the appellee's advocate or search the record for reasons to sustain the judgment. *Talandis*, 63 Ill. 2d at 133.

The following evidence was adduced at the suppression hearing. Defendant testified that she was a high school senior on May 23, 2001. On that day, she drove herself to school in her car. Sometime after she arrived at school, she was called into the office of one of the high school deans, Dean Bylsma, and had a conversation with Bylsma about "some illegal activities." After speaking with Bylsma, defendant called her mother at work and left her a message. Defendant then went to class. At about 2 p.m., Bylsma came to defendant's classroom and told defendant that she needed the keys to defendant's car and that defendant was not to leave the school. Bylsma did not tell defendant why she needed the car keys, nor did she ask defendant's permission to search her car. Defendant gave Bylsma her keys. She denied giving Bylsma or anyone else permission to search her car.

Defendant's mother, Ilene Harris, testified that she received a message from defendant at about 10 a.m. Harris contacted the high school at about 11 a.m. and again at 2 p.m, when she spoke with the high school's Dean Leverance. Leverance explained the situation, and Harris told him that she did not want him to search defendant's car. She also told him that she was on her way to the high school. When Harris arrived at the high school, the police had surrounded defendant's car and were searching it.

Mark Keller, an officer with the Hinsdale police department, testified that on May 23, 2001, he was the school resource officer for Hinsdale Central High School and had been so assigned for four years. On the date in question, he was investigating a burglary and trying to locate a handgun that had been stolen during the burglary. During the morning of May 23, he spoke with several high school students, including defendant and Nicole Ynke, in connection with the burglary.

Based on information he received, Keller went to the apartment of Paul Grinkevisius to look for the stolen handgun. While he was searching the apartment, he received word that high school officials were looking for him. Keller spoke to Dean Bylsma, who told him that she

had received information that the handgun was in a student's car in the student parking lot. Bylsma had received this information from a student, Nicole Ynke, who said that between classes, at approximately 12:20 to 12:25 p.m., defendant had told her that the gun was in her car.

Keller returned to the high school. En route, one of the high school deans told him that permission had been obtained to search defendant's car. A high school security officer met Keller in the student parking lot, where they located defendant's car. Keller testified that defendant's keys had been given to Dean Leverance, who gave the keys to Keller and asked him to search the car. Prior to receiving the keys, the dean's secretary informed Keller by radio that defendant's mother did· not give permission to search the vehicle. Keller never asked defendant whether she consented to a search.

Keller never attempted to obtain a warrant to search defendant's car. He testified that "a lot of" high school seniors were about to be dismissed from school when he searched the car. To prevent the gun from disappearing or "falling into the wrong hands" when the seniors were let out of class, Keller wanted to retrieve the gun rather than wait for a search warrant.

Keller searched the passenger compartment of defendant's car but did not find the gun. He then searched the trunk, where he located it. Neither defendant nor her mother was present when Keller searched defendant's car.

After hearing the evidence, the trial court granted defendant's motion to quash arrest and suppress evidence. The court ruled that there was no consent to search, that Nicole Ynke was an unreliable informant, and that there were no exigent circumstances that justified a warrantless search. When deciding the State's motion to reconsider, the court explained that the appropriate standard to apply to the circumstances was probable cause, not reasonable suspicion. The court determined that probable cause was lacking and denied the State's motion to reconsider.

■ When reviewing a trial court's ruling on a motion to suppress evidence, we must accord great deference to the trial court's factual findings, and we will reverse those findings only if they are against the manifest weight of the evidence. *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001). Our review of the ultimate ruling on a motion to suppress, however, is *de novo. Sorenson*, 196 Ill. 2d at 431.

Our first task is to determine whether the trial court applied the appropriate fourth amendment (U.S. Const., amend. IV) standard for determining whether a warrantless search was justified. The State asserts that Officer Keller needed only reasonable suspicion, rather than probable cause, to seize and search defendant's vehicle. We agree.

■ The United States Supreme Court has held that teachers and school officials do not need a warrant before searching a student, nor must their searches be based on probable cause. "Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search." *New Jersey v. T.L.O.*, 469 U.S. 325, 341, 83 L. Ed. 2d 720, 734, 105 S. Ct. 733, 742 (1985). A search is reasonable if it is justified at its inception and its scope is reasonably related to the circumstances that initially justified the interference. *T.L.O.*, 469 U.S. at 341, 83 L. Ed. 2d at 734, 105 S. Ct. at 743. The reasonableness standard has been extended to situations involving police officers where (1) school officials initiate the search or police involvement is minimal, or (2) school police or liaison officers acting on their own authority conduct the search. See *People v. Dilworth*, 169 Ill. 2d 195, 206-07 (1996) (and cases cited therein). However, courts have applied the probable cause standard when outside police officers initiate the search or when school officials act at the police's behest. See *Dilworth*, 169 Ill. 2d at 207 (and cases cited therein).

In *Dilworth*, our supreme court held that the reasonable suspicion standard applied to a search conducted by a liaison police officer on his own initiative and authority. *Dilworth*, 169 Ill. 2d at 208. The police officer in *Dilworth* was a liaison officer on the staff of a high school for students with behavioral disorders. Two teachers asked the officer to search a student for drugs. The officer's search did not reveal any drugs. However, when the officer escorted the student back to his locker, the student and the defendant (also a student) began talking and giggling in the officer's presence. The officer had the impression that the students thought they had fooled him. The officer saw the defendant holding a flashlight and thought that it might contain drugs. The officer then searched the flashlight and found cocaine. *Dilworth*, 169 Ill. 2d at 207-08.

■ The court applied a three-part balancing test, as set forth in *Vernonia School District 47J v. Acton*, 515 U.S. 646, 132 L. Ed. 2d 564, 115 S. Ct. 2386 (1995), for determining whether special needs beyond law enforcement required a departure from the normal fourth amendment requirements of probable cause and a warrant. *Dilworth*, 169 Ill. 2d at 209. The three-part test includes the following factors: (1) the nature of the privacy interest upon which the search intrudes, (2) the character of the search, and (3) the nature and immediacy of the governmental concern at issue and the efficacy of the means for meeting it. *Dilworth*, 169 Ill. 2d at 209. We now examine these factors to determine whether the circumstances of this case necessitate a departure from the probable cause standard.

■ With respect to the first factor, we recognize that schoolchildren have privacy expectations in items they bring to school. See *Dilworth*, 169 Ill. 2d at 203, quoting *T.L.O.*, 469 U.S. at 339, 83 L. Ed. 2d at 733, 105 S. Ct. at 741. However, it is equally well established that, due to schools' " 'custodial and tutelary responsibility,' " children have a lesser expectation of privacy within the school environment than do members of the population generally. *Dilworth*, 169 Ill. 2d at 209, quoting *Vernonia*, 515 U.S. at 656-57, 132 L. Ed. 2d at 576-77, 115 S. Ct. at 2392.

■ Next, we examine the character of the search. In *Dilworth*, the court emphasized that the liaison officer had an individualized suspicion with respect to the flashlight he searched and that he limited his search to the flashlight. *Dilworth*, 169 Ill. 2d at 209. Likewise, in the case at bar, Officer Keller had an individualized suspicion that a stolen gun was located in defendant's car. He limited his search to defendant's vehicle. Consequently, we conclude that his search was minimally intrusive.

■ We further conclude that the nature and immediacy of the governmental concern and the efficacy of the means for meeting it weigh in favor of the reasonable suspicion standard in this case. Unquestionably, the State has a compelling interest in maintaining a safe school environment. As for the efficacy of the means for meeting this interest, we believe that, in light of the serious potential danger associated with the presence of a handgun on the school grounds, high school officials acted prudently in requesting that resource officer Keller search defendant's vehicle and secure the handgun.

Last, we note that, even though the search of defendant's car was associated with Officer Keller's burglary investigation, the school was intimately involved with the investigation and the search. Dean Bylsma received the information about the gun being located in defendant's car and passed it on to Officer Keller. On her own authority and not at the behest of the police, Bylsma obtained defendant's car keys. Another school official, Dean Leverance, gave the keys to Officer Keller and requested that he search defendant's car. Further, Officer Keller was the resource officer for the high school and that had been his assignment for the past four years. Thus, we cannot equate the facts before us with a situation in which a police officer who is not associated with the school initiates a search incident to an outside investigation. For all of the foregoing reasons, we conclude that the reasonable suspicion standard applies.

■ Next, we consider whether the search of defendant's car was reasonable. The Supreme Court has stated that " 'sufficient probability, not certainty, is the touchstone of reasonableness under the

Fourth Amendment.' " *T.L.O.*, 469 U.S. at 346, 83 L. Ed. 2d at 737, 105 S. Ct. at 745, quoting *Hill v. California*, 401 U.S. 797, 804, 28 L. Ed. 2d 484, 490, 91 S. Ct. 1106, 1111 (1971). As we stated earlier, a search is reasonable if it is justified at its inception and reasonably related in scope to the circumstances that justified the interference in the first place. A search is justified at its inception when there are reasonable grounds for suspecting that the search will yield evidence that the student has violated or is violating either the law or the rules of the school. *Dilworth*, 169 Ill. 2d at 215, quoting *T.L.O.*, 469 U.S. at 341-42, 83 L. Ed. 2d at 734-35, 105 S. Ct. at 743.

Here, a student, Nicole Ynke, informed a school official that defendant told her the gun was in defendant's car. The trial court discounted Ynke's credibility, finding that she had "changed her story" following her initial conversation with Officer Keller on the date in question. Bearing in mind the great deference we must give the trial court's factual findings, we nonetheless conclude that the finding that Ynke was not credible was manifestly erroneous.

The record reveals that, based on information he received from interviewing several students on the morning of May 23, Officer Keller went to the apartment of one Paul Grinkevisius to search for the stolen handgun. While at the apartment, Keller received a phone call from the school. He later spoke with Dean Bylsma, who said that Ynke had informed her that, at approximately 12:20 to 12:25 p.m., defendant revealed to Ynke that the gun was in defendant's car. We find no basis in the record for the trial court's inference that Ynke "changed her story" or intentionally misled the school or the police. Rather, the record indicates that Ynke's conversation with defendant, during which she learned of the gun's location, did not take place until after Ynke had spoken with Keller earlier that day. The record does not reveal any reason for Ynke to have fabricated the information she communicated to Dean Bylsma. Further, nothing in the record indicates that Ynke was the person who told Keller to look for the gun in Grinkevisius's apartment.

In *People v. Pruitt*, 278 Ill. App. 3d 194, 208 (1996), the court held that a student's tip that another student was carrying a gun created reasonable suspicion sufficient to justify a search. The court went on to say that school liaison officers "could not ignore" such information. *Pruitt*, 278 Ill. App. 3d at 208, quoting *In re Alexander B.*, 220 Cal. App. 3d 1572, 1577, 270 Cal. Rptr. 342, 344 (1990). In our view, the information received from Ynke coupled with Officer Keller's suspicion that defendant knew something about the burglary, as evidenced by his earlier interview with her, provided him with reasonable suspicion that the search would yield evidence that defendant had violated or was violating the law.

We further find that Officer Keller's search of defendant's car was permissible in scope. Keller had individualized suspicion that the handgun was in the car, and his search was limited to the passenger compartment and trunk of the vehicle. This measure was reasonably related to the objectives of the search and was not excessively intrusive. We agree with the court in *Pruitt* that the danger posed by a student's possession of a gun on school grounds is " 'great compared to the relatively minor intrusion' " involved in acting on a student's tip. *Pruitt*, 278 Ill. App. 3d at 208, quoting *In re Alexander B.*, 220 Cal. App. 3d 1572, 1577, 270 Cal. Rptr. 342, 344 (1990).

For the foregoing reasons, we conclude that the seizure and search of defendant's car were reasonable under the circumstances and, therefore, were constitutional. Accordingly, we reverse the judgment of the circuit court of Du Page County and remand for further proceedings consistent with our opinion.

Reversed and remanded.

HUTCHINSON, P.J., and GILLERAN JOHNSON, J., concur.