NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241616-U

NO. 4-24-1616

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 7, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Boone County |
| JOSE O. PEREZ ROBLES, | ) | No. 24CF256 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | C. Robert Tobin III, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Steigmann and DeArmond concurred in the judgment.
Justice Steigmann also specially concurred.

**ORDER**

¶ 1    *Held*:    The appellate court reversed, concluding the trial court erred when it concluded there were pretrial release conditions sufficient to mitigate defendant's risk of harm to the alleged victim and other minors in the community.

¶ 2    The State appeals from an order of the Boone County circuit court denying its verified petition for the pretrial detention of defendant, Jose O. Perez Robles. On appeal, the State contends the court erred when it found conditions existed that would sufficiently mitigate the threat of harm defendant posed to the alleged victim and community if permitted pretrial release. Defendant has not filed a responsive memorandum in support of affirming the court's judgment. We reverse.

¶ 3                              I. BACKGROUND

¶ 4                    A. Charges and Verified Petition

¶ 5        On October 16, 2024, the State charged defendant with eight counts of aggravated criminal sexual abuse, Class 1 felonies (720 ILCS 5/11-1.60(f) (West 2022)) (counts I-VI, XIV, and XV) and seven counts of criminal sexual assault, Class 1 felonies (*id.* § 11-1.20(a)(4f)) (counts VII-XIII). On October 17, 2024, the Boone County circuit court issued a warrant for defendant's arrest, and thereafter defendant turned himself in.

¶ 6        The same date, the State filed a verified petition to detain defendant pursuant to section 110-6.1(a)(5) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1(a)(5) (West 2022)). In the petition, the State asserted (1) there was clear and convincing evidence defendant committed a detention-eligible offense; (2) based on the facts and circumstances of the case, defendant posed a real and present threat to the safety of any minor children he may come into contact with; and (3) no condition or set of conditions could mitigate defendant's real and present threat to the safety of any minor children with whom he may come into contact.

¶ 7                    B. Pretrial Detention Hearing

¶ 8        The trial court conducted a hearing on the State's petition the same date it was filed. In support of its petition, the State provided the following by way of proffer:

> "On October 9th, 2024, A.A.G., who is currently 16 years old, came to the Belvidere Police Department with her parents to report that she had been having sexual contact with the defendant, who is 25 years old. She was interviewed by Detective Delavan, stated she met the defendant through their church, which is Iglesia Esperanza Viva in Marengo. He teaches a bible study group there. It is a youth bible study group in which A.A.G. participates. He also teaches music. I believe it's the bass that he is teaching her I believe individually.

During the interview, A.A.G. stated that she met the defendant in February of this year and saw him about three times a week at church services or family gatherings. I believe there's also an in-law relationship between the families. He started sending her messages in April through either Messenger, Snapchat, [WhatsApp], various apps. At some point he began to send her photos of his penis and videos of him masturbating. She also sent him videos or photos of her breasts and vagina. Apparently through the messages, they decided to have a relationship, and during late August and early September, he came to her house here in Belvidere multiple times while she was home alone.

The first time was towards the end of August after school started. She stated it was a Wednesday. She was alone in the house at 6:30 [a.m.] as her parents had already left for work. He came over and was there for about 25 or 30 minutes. During that time, they hugged and touched one another. He kissed her. He touched her breasts, butt and vagina over her clothes. She also touched his penis over his clothes.

The second time was the next day again at the end of August. He came to the house about the same time, stayed for about 30 minutes, same occurrences as the day before. The third time was September 2nd of 2024. He arrived around 6:45 a.m., stayed for approximately 30 minutes. On that date he performed oral sex on her and placed his fingers in her vagina. There was also other hugging, touching and kissing going on. The fourth day was September 3rd when he again arrived at 6:45 a.m., again stayed for about 30 minutes. On this date he placed his penis partially in her vagina. He also performed oral sex on her and placed his fingers in

- 3 -

her vagina. The fifth date was September 4th, same timeframe of arrival. She only reported hugging and kissing at that time. The sixth and final time was September 10th, 2024. He placed his fingers in her vagina. She placed his hands on his—her hands on his penis and his penis touched her mouth. He also ejaculated on her over her underwear.

Shortly after that incident, the victim's sister-in-law started receiving messages about the defendant being seen going to the house. It is unknown who was sending those messages, but the sister-in-law asked some questions of her own. She then confronted A.A.G., who eventually did state that these things were going on. The family went to the church and spoke with the pastor and his wife. The defendant and his wife arrived later at the request of the pastor. He was confronted about the allegations and ultimately admitted it in front of this group of people.

A.A.G. said the defendant knew how old she was because she had told him when they first met. Also knew that she was in high school because he also had actually picked her up from school at least one time. The defendant also sent her a letter in July telling her that he loves her. Again, as I indicated, Judge, the defendant teaches a youth bible study group every Sunday. He also leads an adult group at the church on Friday. He also assists the pastor in many aspects of the church both in Marengo and DeKalb. When he would come to the house, he would park away from the house and enter through the back door, you know, in an attempt to hide that he was getting together with the victim in this case."

The State also read into the record a text message defendant allegedly sent to A.A.G., which stated:

" 'But if in the end someone leaves and they discover who it was and they speak

with this person, we only need to deny everything they say and maintain ourselves to the same story, which is that I have never visited you and you never passed anything and that's it because it's obvious they don't have proof or evidence.' " The State also read into the record another text message defendant allegedly sent to A.A.G. stating, "To be sincere when I see you in person, I remind myself of the moments when I have you totally dominated \*\*\* and it makes me smile inside." The State indicated it was not certain of the date defendant sent these messages.

¶ 9 The State argued that, based on its proffer, defendant was a danger to any minors with whom he may come into contact, and even if ordered not to have contact with minors, "he could very well easily do the same thing again." Accordingly, the State maintained there were no conditions of release that could mitigate this risk.

¶ 10 In response, defendant first provided a letter of support from his employer, which was admitted into evidence as defendant's exhibit No. 1. Additionally, defendant emphasized there was no evidence presented that he posed a threat to minors in general. Defendant scored a 0 on his pretrial risk assessment, had no criminal history, and turned himself in when the warrant was issued. Moreover, defendant's argument continued, there were numerous conditions available to mitigate any potential threat he posed. Specifically, defense counsel proposed "[n]o contact with A.[A.]G., no contact with those under the age of 18, no contact with the church, [and] not to use a cell phone but for limited purposes such as work."

¶ 11 At the conclusion of the hearing, the trial court found the State had met its burden of showing by clear and convincing evidence that the proof was evident and the presumption great that defendant had committed a detention-eligible offense. The court further found defendant posed a clear and present threat to A.A.G., and "abstractly he may pose a threat to minors that he

would have access to under the age of 18."

¶ 12        Ultimately, the trial court found defendant should be allowed pretrial release with conditions and denied the State's petition to detain. Specifically, the court ordered defendant to (1) report to pretrial services, (2) not violate any criminal statutes or ordinances, and (3) have no contact with Iglesia Esperanza Viva, A.A.G., A.A.G.'s immediate family, and any other minors or their residences. The court thereafter entered a written order stating the same, and defendant signed an agreement detailing the conditions of his release.

¶ 13                        C. State's Motion for Relief

¶ 14        On November 14, 2024, the State filed a motion for relief from the trial court's pretrial release order. In its motion, the State argued the conditions imposed could not feasibly mitigate the risk defendant posed to other minors in the community. Specifically, the State claimed there was no way to ensure defendant's compliance with the condition he have no contact with minors under the age of 18. The State further emphasized the fact defendant sent text messages to A.A.G. after the allegations were made known to her parents but before charges were filed. In sum, the State maintained there was no way to monitor whether defendant would comply with the no-contact provisions.

¶ 15        On December 13, 2024, the trial court conducted a hearing on the State's motion. In support of its motion, the State reiterated the arguments made therein and asserted the court failed to consider "the nature and seriousness of obstructing or attempting to obstruct the criminal justice process" with respect to the text messages defendant sent to A.A.G. The State claimed those text messages showed defendant had engaged in an attempt to keep A.A.G. "quiet" and "keep with their story." The State further emphasized that the pretrial services department had no way of monitoring defendant's compliance with the condition to have no contact with minors. When asked

by the court if any other victims had come forward or if there was any evidence defendant had engaged in a pattern of sexual misconduct, the State responded it was not aware of any. In response, defendant once again emphasized his lack of criminal history and his score of 0 on the risk assessment. Defendant also noted that in the two months since he was initially granted pretrial release, he had been compliant with the conditions of his release.

¶ 16 Following arguments, the trial court denied the State's motion for relief. The court noted the governing statute presumes a defendant is eligible for pretrial release. The court further explained that while certain conditions may be difficult to monitor, it could not "assume that people aren't going to follow conditions of release." Ultimately, the court was persuaded that the lack of compliance issues since pretrial release was initially ordered indicated defendant was likely to continue to comply with said conditions. Essentially, the court concluded the current conditions to which defendant was subject were working and it had no reason to believe they would not continue to mitigate any potential threat defendant posed to A.A.G. or other minors.

¶ 17 On December 20, 2024, the State filed a notice of appeal pursuant to Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024).

¶ 18                                    II. ANALYSIS

¶ 19 On appeal, the State asserts "the court abused its discretion in finding that less restrictive conditions other than detention would be sufficient to protect the community from defendant," and it "either did not consider or did not appropriately weigh the factors in 725 ILCS 5/110-6.1(g) [(West 2022)], in evaluating the danger defendant poses to any person or the community." Specifically, the State claims the conditions imposed by the court were not sufficient to mitigate the threat defendant posed to both A.A.G. and other minors because there was no way to monitor his phone communications or ensure he did not have contact with minors, which the

State found "especially troubling in the present case, where defendant used numerous internet applications to communicate with the victim and advance their relationship."

¶ 20 We note defendant has not filed a responsive memorandum. However, we nonetheless conclude we may address the merits of this case because the record is simple and the issue presented on appeal may be resolved without the aid of defendant's response. See *People v. Williams*, 339 Ill. App. 3d 956, 958 (2003).

¶ 21                                    A. Applicable Law

¶ 22 Following the abolishment of cash bail in Illinois, all criminal defendants are presumed to be eligible for pretrial release pending trial. See 725 ILCS 5/110-1.5 (West 2022); see also *id.* § 110-2(a). However, the trial court may detain a defendant pretrial under certain conditions provided by statute. See *id.* § 110-6.1(e); see also *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 10.

> "For most of the qualifying offenses, upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense [citation], that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community [citation], *** and that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community." *Id.*

¶ 23 If the trial court finds the State has proven defendant has committed a qualifying offense and poses a real and present threat to any individual person or the community, it must then determine "which pretrial release conditions, 'if any, will reasonably ensure *** the safety of any other person or the community and the likelihood of compliance by the defendant with all the

conditions of pretrial release.' " *Id.* ¶ 12 (quoting 725 ILCS 5/110-5(a) (West 2022)).

> "In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, (4) the nature and seriousness of the real and present threat to the safety of any person or the community that would be posed by the defendant's release, and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process." *Id.*

¶ 24　Although the State asserts in its memorandum of law that the trial court abused its discretion, the Illinois Supreme Court recently held that "when the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *People v. Morgan*, 2025 IL 130626, ¶ 54. Upon *de novo* review, this court affords the trial court's legal conclusions no deference, meaning we may substitute our own judgment for that of the trial court. See *People v. Coleman*, 183 Ill. 2d 366, 388-89 (1998) (holding a *de novo* standard applies to the review of a first-stage dismissal of a postconviction petition). This is because, theoretically, the trial court is in no better position than this court to resolve these purely legal questions. *Morgan*, 2025 IL 130626, ¶ 22. Here, because the State proceeded by way of proffer at the pretrial detention hearing and now challenges the court's application of its factual findings to the law, we conclude our review is *de novo*. See *id.* ¶ 54.

¶ 25　　　　　　　　　　　　　　B. This Case

¶ 26　In our *de novo* review of the proceedings, we conclude the trial court erred when it

concluded there were pretrial conditions it could impose that would sufficiently mitigate the risk of harm defendant posed to both A.A.G. and other minors in the community. The record shows that at the initial detention hearing, the court stated it considered the proffered evidence and concluded the State had met its burden as to the first two prongs of the pretrial detention analysis. The court emphasized defendant's lack of criminal history, his score of 0 on the risk assessment, employment, and ties to the community. However, those community ties involved defendant's participation as a Bible study and music teacher, positions he used to perpetrate the alleged crimes in this case. The court also stated it considered the nature and seriousness of the alleged offenses in this case.

¶ 27    Despite this consideration of several applicable statutory factors, the trial court failed to assign sufficient weight to (1) the strength of the evidence against defendant, (2) defendant's efforts to undermine the criminal justice process in this case, and (3) the inability of the pretrial services department to sufficiently monitor or ensure defendant's compliance with the conditions imposed. The court appeared to disregard the fact defendant had confessed to his actions against the victim to a group of people at the church. Such an admission is an incredibly strong piece of evidence. Further, the court noted at the motion for relief hearing its position that unless it has reason to believe otherwise, it will presume a defendant will comply with pretrial conditions. However, the State's proffer showed that even after being discovered, defendant sent dozens of messages, several of which attempted to manipulate A.A.G. into not coming forward. One of those texts was especially concerning because it indicated defendant "smiled" when he thought about how he previously "dominated" A.A.G. Such language is indicative of defendant's pleasure in controlling A.A.G. and thereby her ability to disclose these allegations. Despite defendant's eventual admission about his illicit relationship with her to others, nothing in the

record suggests his conduct was a mere mistake or an isolated occurrence. The charges stem from multiple occasions wherein defendant came to A.A.G.'s home when he knew her parents were at work, parked his car away from the house, and entered the home through the back door. This was strong evidence of defendant's consciousness of guilt and willingness to obstruct his unlawful conduct. See 725 ILCS 5/110-5(a)(5) (West 2022) (requiring the trial court to consider "the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process"); see also *People v. Romine*, 2024 IL App (4th) 240321, ¶ 23 (concluding the defendant's obstructive conduct in his first degree murder case was "not consistent with an innocent mistake or genuine remorse but a concerted refusal to accept responsibility for conduct he knew was wrong").

¶ 28        Moreover, while the trial court believed the conditions imposed were sufficiently tailored to mitigate any risk of harm to A.A.G. and other minors in the community, it failed to account for defendant's use of multiple electronic messaging applications to further his illicit relationship with A.A.G. Using his position of trust as a Bible study leader and music teacher, defendant initiated the grooming process by using these applications to privately message her. As communication increased, he sent her videos of his genitalia and of himself masturbating. Ultimately, using these applications, defendant's contact with her escalated into the alleged crimes. Although ordered not to contact A.A.G., her family, the church, or any other minors, the court had no way of ensuring defendant would not continue to use these applications to contact A.A.G. or other minors. The court even acknowledged at the motion for relief hearing, "It's possible [defendant is] contacting people under 18 23 out of 24 hours of the day on a burner phone." The State further explained at the motion for relief hearing that the condition defendant report to pretrial services only required him to advise them of a change in address or any new criminal charges. There is no additional evidence in the record of other significant conditions available that might

- 11 -

mitigate the serious threat defendant posed to A.A.G. and other minors. In our view, under the specific facts of this case, the State met its burden of showing by clear and convincing evidence there were no pretrial conditions available that would sufficiently mitigate defendant's risk of harm to A.A.G. and other minors in the community. Accordingly, we reverse the court's (1) October 17, 2024, judgment ordering defendant's pretrial release with conditions and (2) February 12, 2025, order denying the State's motion for relief.

¶ 29                                              III. CONCLUSION

¶ 30        For the reasons stated, we reverse the trial court's judgment. Pursuant to Illinois Supreme Court Rule 604(h)(8) (eff. Apr. 15, 2024), the deadline for this court to file its decision in this case was March 31, 2025. However, Rule 604(h)(8) provides this court with the ability to extend the deadline for good cause. *Id.* We have done so in this case.

¶ 31        Reversed.

¶ 32        JUSTICE STEIGMANN, specially concurring:

¶ 33        Although I fully agree with my distinguished colleagues in the majority, I write this special concurrence to express my discomfort about the role of the appellate court in reviewing pretrial detention orders.

¶ 34        In *People v. Morgan*, 2025 IL 130626, ¶ 54, the Illinois Supreme Court ruled that when the parties to a pretrial detention hearing proceeded solely by proffer, meaning no live testimony was presented, our standard of review should be *de novo*. Under that standard, we may substitute our judgment for that of the trial court and need show no deference to that court's findings of fact or weighing of statutory factors.

¶ 35        In accordance with *Morgan*, we have conducted a *de novo* review in this case and determined that, had we been in the trial court's position, we would have granted the State's petition and ordered defendant's pretrial detention. Accordingly, we reversed the trial court.

¶ 36        Nonetheless, my problem in this case is our review of the trial court's proceedings *doesn't feel like de novo* review.

¶ 37        Perhaps the best way I can describe this feeling is by comparing serving as a reviewing court judge in this case to serving as a reviewing court judge in cases in which we are called upon to interpret a will, a contract, or a statute. In such cases, we would comfortably employ the *de novo* standard of review.

¶ 38        But in this case, as in seemingly all appeals of pretrial detention decisions, I have a sense that there's more to the trial court's ruling than just the proffers of the parties and documentary evidence, if any. Perhaps it's nothing more than the trial court's far greater familiarity with local resources and the local situation in general than we have. Or perhaps it is my years of experience as a trial court judge conducting bond hearings. Whatever it may be, *de novo* review in pretrial detention hearings seems to be missing something important, even if intangible.

¶ 39        But if we take *Morgan* at face value, it seems we should ignore whatever these intangibles might have been and decide this case based solely upon what we think we would have done if we had been the trial court. And that is what we have done in this case.